AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
05/18/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

DENIED
BY ORDER OF
Margo A. Rocconi
UNITED STATES MAGISTRATE JUDGE
ON: ___5/19/21___

United States of America

v.

JOEL ANTONIO BARILLAS,

Defendant(s)

Case No. 2:21-mj-02465

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 5, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922(g) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Alyson Lundby, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

Judge's signature

City and state: Los Angeles, California

Hon. Margo A. Rocconi, U.S. Magistrate Judge
Printed name and title

AUSA: Maria Jhai

**AFFIDAVIT**

I, Alyson Lundby, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against JOEL ANTONIO BARILLAS, also known as "Spider" ("BARILLAS"), for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

2. This affidavit is also made in support of an application for a warrant to search the following digital device in the custody of Los Angeles Police Department ("LAPD"), in Los Angeles, California, as described more fully in Attachment A-1: A black Samsung cellular telephone with a cracked front screen and cracked rear case (the "SUBJECT DEVICE").

3. This affidavit is also made in support of a search warrant for a sample of deoxyribonucleic acid ("DNA"), which is to be obtained via cotton/buccal or cheek swab, from BARILLAS, as described in Attachment A-2.

4. The requested search warrants seek authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm) (the "Subject Offense") as described more fully in Attachments B-1 and B-2. Attachments A-1, A-2, B-1, and B-2 are incorporated herein by reference.

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

6.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since February 2019.  I am assigned to an organized crime squad and specifically am a member of the Major Theft Task Force ("MTTF"), where I am responsible for investigating robberies, frauds, and other theft-related crimes committed by various organized theft and crime groups.  As a Special Agent, I have received extensive training regarding federal criminal law.  I completed 21 weeks of training at the FBI Academy located at Quantico, Virginia, where I received training in federal theft-related laws, identification and investigation of organized criminal networks, and various surveillance and investigative techniques related to organized crime.  I regularly refer to these laws during the course of my duties and have written and participated in the execution of several state and federal search and arrest warrants investigating violation of these laws.  My investigations have also included analysis of court-authorized wiretaps, digital device analysis, physical surveillance, and investigations involving confidential sources and cooperating

witnesses.  Before I was a Special Agent, for approximately three years I worked as an Investigative Specialist for the FBI, where I worked on a mobile surveillance team of the Special Surveillance Group.

### III. **SUMMARY OF PROBABLE CAUSE**

6.  On May 5, 2021, LAPD officers on patrol encountered BARILLAS, whom they recognized from prior encounters and knew was a convicted felon who was on Post Release Community Supervision with conditions that required him to submit to search of his person.  As the officers approached BARILLAS to speak with him, BARILLAS took off running.  During pursuit of BARILLAS, the officers saw BARILLAS grab his waistband in a manner that they recognized as consistent with holding a gun. BARILLAS briefly attempted to hide behind a white GMC truck, at which point officers saw him holding what appeared to be the grip of a black handgun at his waistband.  Officers continued to pursue BARILLAS and ultimately detained him.  In a search of the area around the white truck where BARILLAS had attempted to hide, officers found a black semi-automatic .40 caliber handgun, with nine live rounds of ammunition in the magazine and a live round in the chamber.

7.  A firearms expert determined that the black semi-automatic .40 caliber handgun was manufactured outside California and therefore had traveled in interstate or foreign commerce.

## IV. STATEMENT OF PROBABLE CAUSE

8.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. BARILLAS Discards a Loaded Gun While Fleeing from Police

9.  On or about May 5, 2021, at approximately 8:20 p.m., Officers Menasakanian and Gruendyke of the LAPD Hollenbeck Division Gang Enforcement Detail were working patrol in full uniform and driving a marked black-and-white police vehicle with forward facing red lights.

10. I reviewed body-worn video and the arrest report documenting the officers' encounter with BARILLAS, and learned the following:

   a.  The officers were driving east on Washington Boulevard approaching Soto Street in Los Angeles, California when they spotted BARILLAS, whom they recognized from prior encounters. BARILLAS was standing next to a bicycle in the parking lot of a 7-11 store located at 1717 South Soto Street, in Los Angeles, California. The officers were aware that BARILLAS was on Post Release Community Supervision with search conditions, and approached BARILLAS to attempt to conduct a probation compliance check.

   b.  As the officers got out of their car and approached BARILLAS to speak with him, he immediately took off running. As BARILLAS fled, he grabbed his waistband with his right hand as though trying to secure an object. At this point,

based on the officers' training and experience, as well as their knowledge of BARILLAS's previous criminal history involving firearms, the officers believed BARILLAS was attempting to safeguard a firearm in his waistband.  During this portion of the pursuit, Officer Menasakanian can be heard on the body-worn video shouting, "Hey, he has a gun! He has a gun!"

        c.   As the officers continued to chase BARILLAS, BARILLAS ran into a garage on South Soto Street, and took cover behind a white GMC pickup truck (the "White GMC").  From outside the garage, officers witnessed BARILLAS holding the grip of a black handgun at his waistband while moving from side to side behind the White GMC.

        d.   BARILLAS then continued to flee, by jumping a fence at the rear of the garage, taking himself out of the officers' sight.  The officers called for backup, and units arrived and set-up a perimeter around the area.  Officers and other specialized LAPD personnel conducted an hours-long search of the area, until a K-9 unit located BARILLAS hiding in a Conex shipping container in a scrap yard located on East Washington Boulevard.  Officers gave BARILLAS repeated commands to exit the shipping container and he refused to comply.  Eventually, BARILLAS emerged from the shipping container and was placed under arrest.  The handgun was no longer on BARILLAS's person at the time of arrest.

        e.   In a search of the area around the White GMC, where BARILLAS had been seen crouching during the pursuit, officers found a black semi-automatic handgun located underneath

5

the White GMC.  As documented in the property report, the handgun was a black, .40 caliber Springfield XDM semi-automatic handgun, bearing serial number MG129935, and had a magazine containing nine live .40 caliber bullets, as well as one live .40 caliber bullet seated in the chamber of the handgun.  The handgun was rendered safe and placed in an evidence bag.  BARILLAS was arrested and charged with being a felon in possession of a firearm in violation of California Penal Code § 29800(A)(1).

11.  The items on BARILLAS' person at the time of his arrest were inventoried, including the SUBJECT DEVICE.  The SUBJECT DEVICE was booked as part of BARILLAS' personal property and is currently maintained in LAPD custody.

### B.   BARILLAS is a Convicted Felon

12.  On or about May 7, 2021, I reviewed BARILLAS' criminal history records and learned that BARILLAS has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a.  On or about May 29, 2018, a violation of California Penal Code § 29800(a)(1), felon in possession of a firearm, in the Superior Court for the State of California, County of Los Angeles, Case Number VA147741;

    b.  On or about August 30, 2016, a violation of California Penal Code §§ 664-459, Attempted Burglary, in the Superior Court for the State of California, County of Los Angeles, Case Number VA142639;

6

      c.    On or about June 7, 2016, a violation of California Vehicle Code 10851(a), Vehicle Theft, in the Superior Court for the State of California, County of Los Angeles, Case Number VA142057.

### C. The Firearm Traveled in Interstate Commerce

13. On May 12, 2021, FBI Certified Firearm Specialist Special Agent Trevor Twitchell reviewed images of the firearm from body worn video and information in the LAPD arrest and property reports, and determined that the firearm is a Springfield Armory, Model XD-M, .40 caliber pistol, bearing serial number MG129935, and that it was manufactured by Springfield Armory in either Illinois or internationally, and therefore must have traveled in and affected interstate commerce to be found in California.

### V. TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

14. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

      a.    Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other

7

individuals involved in criminal activities for future purchases or referrals. Such information is also kept on digital devices.

      b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

      c. Those who illegally possess firearms often sell their firearms and purchase firearms. Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

15. As used herein, the term "digital device" includes the SUBJECT DEVICE.

16.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

9

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

17.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

        a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

        b.    Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of

data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

18. The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

    a. Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

    b. In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

        c.    The person who is in possession of a device or has the device among his or her belongings is likely a user of the device.  Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress BARILLAS's thumb- and/or fingers on the device; and (2) hold the device in front of BARILLAS's face with his eyes open to activate the facial-, iris-, and/or retina-recognition feature.

    19.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

    20.  For all of the reasons described above, there is probable cause to believe that JOEL ANTONIO BARILLAS has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.  There is also probable cause that the

//
//
//
//
//

items to be seized described in Attachments B-1 and B-2 will be found in the property and on the person to be searched described in Attachments A-1 and A-2.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of May, 2021.

_____
HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE